MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, Suite 2020
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
WELLINGTON BRIONES and LUIS
JULIAN RAYON, *individually and on behalf
of others similarly situated,*

                    *Plaintiffs,*

                -against-

STARJEM RESTAURANT CORP (d/b/a
FRESCO BY SCOTTO), MARION SCOTTO
and ANTHONY SCOTTO
                    *Defendants.*
--------------------------------------------------------------X

**COMPLAINT**

       Wellington Briones and Luis Julian Rayon ("Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Starjem Restaurant Corp (d/b/a Fresco by Scotto) ("Defendant Corporation" or "Fresco by Scotto") Marion Scotto and Anthony Scotto (together with Defendant Corporation, "Defendants"), allege as follows:

## NATURE OF THE ACTION

    1.     Plaintiffs are former employees of Defendants Starjem Restaurant Corp. (d/b/a Fresco by Scotto) Marion Scotto and Anthony Scotto.

    2.     Defendants own, operate, and/or control a restaurant located at 34 East 52nd Street, New York, NY 10022 under the name "Fresco by Scotto."

1

3. Plaintiffs were ostensibly employed by Defendants as busboys, but were also required to perform various other restaurant duties, such as, cleaning silver, cleaning glasses at the bar, cleaning walls, photographs, and windows, flower pots, sweeping, vacuuming and mopping floors, transporting wooden and metal screens for parties, and transporting chairs for parties (herein after "non-tipped duties").

4. Plaintiff Briones was sometimes assigned the jobs of coffee maker, barback, or food runner, and as a stocker for an entire shift. Plaintiff Julian was sometimes assigned to work as a barback and as a stocker for an entire shift.

5. During some weeks Plaintiff Briones and Plaintiff Julian worked for Defendants in excess of 40 hours per week, without appropriate compensation for the hours over 40 per week that they worked. Additionally, during part of Plaintiff Briones' employment, Defendants failed to keep track of the hours worked by Plaintiff Briones, and paid Plaintiff on a "shift basis" rather than an hourly basis. Further, until June 2011, Defendants failed to pay Plaintiff Briones the required "spread of hours" pay for any day in which he had to work over 10 hours per day.

6. At all times Defendants paid Plaintiffs at the lowered tip-credit rate.

7. However, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

8. Defendants also were not permitted to pay Plaintiffs at the tip-credit rate because they were required to share tips with other employees who were not eligible to receive tips, because they did not perform service jobs.

9. Specifically, Plaintiffs were required to pool their tips with the entire front-of-the-house team. However, participating in the tip pool was an employee known as a stocker who did

2

not perform direct customer service. Also, coffee makers would always participate in the tip pool, even though they sometimes did not engage in any service of customers.

10. Additionally, Plaintiff Briones and other front-of-the-house employees were required to share tips with manager Brent Drill, until January 1, 2013.

11. Plaintiff Briones and other front-of-the-house employees also were required to share tips with manager Attilio Vosilla from parties, when Vosilla served as a "party captain." Specifically, Defendants would change a mandatory 20% service charge for parties, but only 85% of that charge would be given to the front-of-the-house employees' tip pool, with 15% going to Vosilla when he served as a party captain.

12. On approximately June 2011, Defendants implemented a time clock, and began to pay Plaintiff Briones and other front-of-the-house employees at an hourly wage. However, the time-clock systematically undercounted the time Plaintiff Briones and Plaintiff Julian worked, causing them to be paid for less than their full time worked.

13. Plaintiffs now bring this action for unpaid minimum wages and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146 (2006) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1337 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

15. Venue is proper in this District under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiff*

16. Wellington Briones ("Plaintiff Briones" or "Mr. Briones") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately December 6, 2010 until on or about April 15, 2015.

17. Luis Julian Rayon ("Plaintiff Julian" or "Mr. Julian") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately November 2013 until on or about April 30, 2015.

*Defendants*

18. At all times relevant to this complaint, Defendants own, operate, and/or control an Italian style restaurant located at 34 East 52nd Street, New York, NY 10022, under the name "Fresco by Scotto".

19. Upon information and belief, Starjem Restaurant Corp is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 34 East 52nd Street, New York, NY 10022.

20. Defendant Marion Scotto is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Marion Scotto is sued individually in her capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

4

21.     Defendant Marion Scotto possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

22.     Defendant Marion Scotto signed Plaintiff and similar employees' checks, interviewed and hired some employees of Fresco, gave direction to Plaintiffs and other Fresco employees, was physically present at Fresco every day, was involved in deciding whether Fresco would hire additional employees, was involved in drafting Fresco's employee policy guide, was in charge of Fresco's front of the house operations, was viewed by all employees as "the boss," and was and is the president, chief executive officer, and majority shareholder of Defendant Corporation.

23.     Defendant Anthony Scotto is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Anthony Scotto is sued individually in his capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

24.     Upon information and belief, Defendant Anthony Scotto possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

25.     Defendant Anthony Scotto determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS
### *Defendants Constitute Joint Employers*

26. Defendants operate an Italian style restaurant under the name "Fresco by Scotto" located in the Midtown East Section of Manhattan.

27. Upon information and belief, Individual Defendant Marion Scotto possesses operational control over the Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation.

28. Upon information and belief, Individual Defendant Anthony Scotto possesses operational control over the Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation.

29. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

30. Each Defendant possessed substantial control over Plaintiffs' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

31. Defendants jointly employed Plaintiffs, and were his employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

32. In the alternative, Defendants constitute a single employer of Plaintiffs.

33. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of compensation in exchange for their services.

34.     In each year from 2010 to the present, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

35.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. For example, numerous items that were used and sold daily at Fresco by Scotto, such as meats and beverages, were produced outside the state of New York.

*Plaintiff Wellington Briones*

36.     Plaintiff Briones was employed by Defendants from approximately June 2010 until on or about April 15, 2015.

37.     Plaintiff Briones was ostensibly employed by Defendants as a busboy and a food runner.

38.     However, throughout his employment with Defendants, when assigned to work as a busboy, Plaintiff Briones spent over 20% of his workday performing the non-tipped duties described above.

39.     Additionally, when Plaintiff Briones was assigned to work as a stocker, he spent his entire shift performing non-service work.

40.     When Plaintiff Briones was assigned to work as a barback, he performed approximately half his time doing non-busser, non-tipped work.

41.     Plaintiff Briones regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

42.     Plaintiff Briones' work duties required neither discretion nor independent judgment.

43. Plaintiff Briones' schedule varied from week-to-week. Before June 2011, Defendants did not keep track of Plaintiff Briones' exact hours worked, and rather only kept track of the shifts he worked.

44. During this period, Defendants failed to pay Plaintiff Briones for all hours he worked.

45. Fresco's schedule for employees like Plaintiff Briones was split into lunch and dinner shifts. Typically, Briones worked approximately seven shifts per week, though some weeks he worked more, and some weeks he worked fewer. Lunch shifts were usually from 10:00 a.m. to 4:00 p.m., and dinner shifts typically were from approximately 4:00 p.m. to 10:00 p.m.; however, depending on Briones' exact assignment on a shift, the hours varied. Sometimes Briones had to stay later at the end of a shift.

46. Since approximately June 11, 2011, Briones recorded his hours worked by entering a code into a computer. However, for part of the time Briones was employed by Defendants, the timekeeping system regularly and automatically deducted approximately 19 minutes per shift from Briones' times, and Briones was not compensated for that time worked.

47. In some weeks during this time period, Briones worked more than 40 hours in the week.

48. Throughout his employment with Defendants, Plaintiff Briones was paid his wages by check.

49. Plaintiff Briones was paid a flat rate of $5.00 per hour. He received this pay rate for all shifts, regardless of whether he worked as a busboy, stocker, food runner, barback, or coffee runner.

50. Plaintiff Briones was illegally required to share a percentage of his tips with managers Brent Drill and Attilio Vosilla, whom Defendants called "Captains".

51. Plaintiff Briones was unlawfully required to share his tips with employees performing non-tipped work, including the stocker, barback, and coffee maker, when he worked as a busser or food runner.

52. Plaintiff Briones unlawfully was paid at the tipped employee rate when he worked in non-service positions, such as stocker, coffee maker, or barback.

53. For part of Plaintiff Briones' employment, Defendants did not provide him with a wage notice at the start of each year, in English and in Spanish (Plaintiff' Briones' primary language), of his wage rate, and such other information as is required by NYLL§195(1).

54. For part of Plaintiff Briones' employment, Defendants did not provide Plaintiff Briones with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

55. Defendants required Plaintiff Briones to purchase "tools of the trade" with his own funds, including specific shirts and ties which Plaintiff Briones and similarly situated were required to purchase.

*Plaintiff Luis Julian Rayon*

56. Plaintiff Julian was employed by Defendants from approximately November 2013 until on or about April 30, 2015.

57. Plaintiff Julian was ostensibly employed by Defendants as a busboy.

58. However, throughout his employment with Defendants, when assigned to work as a busboy, Plaintiff Julian spent over 20% of his workday performing the non-tipped duties described above.

9

59. Additionally, when Plaintiff Julian was assigned to work as a stocker, he spent his entire shift performing non-service work.

60. When Plaintiff Julian was assigned to work as a barback, he performed at least half his time doing non-busser, non-tipped work.

61. Plaintiff Julian regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

62. Plaintiff Julian's work duties required neither discretion nor independent judgment.

63. Plaintiff Julian's schedule varied from week-to-week. During some weeks Plaintiff Julian worked more than 40 hours per week.

64. Plaintiff Julian recorded his hours worked by entering a code into a computer. However, for part of Julian's employment, the timekeeping system regularly and automatically deducted approximately 19 minutes per shift from Julian's times, and Julian was not compensated for that time worked.

65. Throughout his employment with Defendants, Plaintiff Julian was paid his wages by check.

66. Plaintiff Julian was paid a flat rate of $5.00 per hour. He received this pay rate for all shifts, regardless of whether he worked as a busboy, stocker, or barback.

67. Plaintiff Julian was unlawfully required to share his tips with employees performing non-tipped work, including the stocker, barback, and coffee maker, when he worked as a busser.

68. Plaintiff Julian unlawfully was paid at the tipped employee rate when he worked in non-service positions, such as stocker, coffee maker, or barback.

69. For part of Plaintiff Julian's employment, Defendants did not provide Plaintiff Julian with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

70. Defendants required Plaintiff Julian to purchase "tools of the trade" with his own funds, including specific shirts and ties which Plaintiff Julian was required to purchase.

*Defendants' General Employment Practices*

71. At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs to work in excess of 40 hours per week without paying them appropriate minimum wage, overtime, and spread of hours compensation, as required by federal and state laws.

72. Defendants required Plaintiffs to perform several non-tip-related tasks for over 20% of each work day, in addition to their primary roles as busboys.

73. On some shifts, Plaintiffs' duties involved either no or minimal engagement in service that typically generates tips, and Plaintiffs spent their entire shift performing non-tipped work.

74. Plaintiffs were paid at the lowered tip-credited rate by Defendants, however, under state law Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever were less) (12 N.Y.C.R.R. § 146).

75. Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

76. Plaintiffs' duties were not incidental to his occupation as a busboy, but instead constituted entirely unrelated occupations with duties such as those outlined above. While performing these duties, Plaintiffs did not receive tips; therefore, they constituted non-tipped

occupations, and Defendants could not lawfully take a tip credit for any of the hours that Plaintiffs worked in these roles.

77. In violation of federal and state law as discussed above, Defendants classified Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

78. Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

79. Plaintiffs have been victims of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by *inter alia*, willfully denying them their earned tips and not paying them the wages they were owed for the hours they had worked.

80. As part of their regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.

81. This policy and pattern or practice included depriving tipped workers of a portion of the tips earned during the course of employment.

82. Defendants unlawfully misappropriated charges purported to be gratuities, received by Plaintiffs and other tipped workers in violation of New York Labor Law § 196-d.

83. Specifically, Plaintiffs were required to pool tips with the entire front-of-the-house staff. However, participating in the tip pool was an employee known as a "stocker," who did not perform any direct customer service. The stocker duties (restock glasses, silverware, and

plates) did not result in them engaging in direct customer service. Also participating was a coffee maker, who on most lunch shifts did not perform any customer service.

84. Plaintiff Briones was also illegally required to share their tips with managers Brent Drill and Attilio Vosilla.

85. In addition, Defendants retained and/or misappropriated tips paid by patrons for banquets and/or private events.

86. Defendants required certain customers to pay a percentage of their bills as a gratuity. However, Defendants did not distribute this gratuity in its entirety to tipped employees.

87. Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

88. Defendants failed to post required wage and hour posters in the workplace in a place where they could actually be read by Plaintiffs.

89. Defendants provided inaccurate statements of wages to Plaintiffs.

90. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

91. Upon information and belief, this was done to disguise the actual number of hours Plaintiff Briones worked, and to avoid paying Plaintiff Briones properly for (1) the full hours worked, (2) for overtime due, and (3) for spread of hours pay.

92. Defendants failed to provide Plaintiff Briones, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FIRST CAUSE OF ACTION
## (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

93. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

94. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

95. Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of any compensation.

96. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

97. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

98. Defendants failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

99. Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

100. Plaintiffs were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

101. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

102. Defendants, in violation of the FLSA, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

103. Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

104. Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

105. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

106. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

107. Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rates and methods of any compensation in exchange for their employment.

108. Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

109. Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

110. Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE NEW YORK LABOR LAW)

111. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

112. Defendants, in violation of the NYLL § 190 *et seq.* and associated rules and regulations, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

113. Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

114. Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

115. Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

116. Plaintiff Briones repeats and realleges all paragraphs above as though fully set forth herein.

117. Defendants failed to pay Plaintiff Briones one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Briones' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 and 137-3.11 (before January 2011), and §146-1.6 (after January 2011).

118. Defendants' failure to pay Plaintiff Briones an additional hour's pay for each day Plaintiff Briones' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

119.    Plaintiff Briones was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

120.    Plaintiff Briones repeats and realleges all paragraphs above as though fully set forth herein.

121.    Defendants failed to provide Plaintiff Briones with a written notice, in English and in Spanish (Plaintiffs' primary language), of his rate of pay, regular pay day, and such other information as required by NYLL §195(1).

122.    Defendants are liable to Plaintiff Briones in the amount of $2,500, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

123.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

124.    Defendants did not provide Plaintiffs with accurate wage statements upon each payment of wages, as required by NYLL 195(3).

125.    Defendants are liable to Plaintiffs in the amount of $2,500 for each Plaintiff, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
### (VIOLATION OF THE TIP MISAPPROPRIATION PROVISIONS OF THE NYLL)

126.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

127.    Defendants unlawfully misallocated gratuities intended for Plaintiffs to manager and non-service employees, in violation of NYLL §196-d.

128.    Plaintiff Briones was damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a) Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs;

(b) Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs;

(c) Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' compensation, hours, wages, and any deductions or credits taken against wages;

(d) Declaring that Defendants' violation of the provisions of the FLSA was willful as to Plaintiffs;

(e) Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f) Awarding Plaintiffs liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g) Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h) Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i) Declaring that Defendants violated the Spread of Hours Wage Order of the New

York Commission of Labor as to Plaintiff Briones;

(j)     Declaring that Defendants violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages;

(k)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(l)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, damages for any tips misappropriated from Plaintiffs, as well as awarding spread of hours pay under the NYLL as applicable;

(m)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(n)     Awarding Plaintiffs pre-judgment and post-judgment interest as applicable;

(o)     Declaring that Defendants violated the tip withholding and the timely payment provisions of Article 6 of the NYLL;

(p)     Declaring that Defendants' violation of the provisions of Article 6 of the NYLL was willful;

(q)     Awarding Plaintiffs liquidated damages, interest, costs and attorneys' as provided by Article 6 of the NYLL;

(r)     Awarding Plaintiffs the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

      (t)    All such other and further relief as the Court deems just and proper.

Dated: New York, New York
       June 16, 2015

MICHAEL FAILLACE & ASSOCIATES, P.C.

By: _____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 2020
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*